# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| | * | Case No. 18-mj-3478 |
| **v.** | * | |
| | * | |
| | * | |
| **OSCAR R. TYER JR.,** | * | |
| | * | |
| | * | |
| **Defendant** | * | |

\*\*\*\*\*\*\*\*\*\*\*\*

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant's Motion to Suppress (ECF No. 28), his supporting Supplemental Memorandum (ECF No. 40), and the Government's Opposition to Defendant's Motion to Suppress (ECF No. 41). The Court held a hearing on October 7, 2019, where United States Park Police ("USPP") Officer Kevin Scales testified about his encounter with Defendant in his vehicle parked in a travel lane on the Baltimore-Washington Parkway on October 6, 2018. The officer observed Defendant napping while reclined in the driver's seat. In response to the officer's inquiry whether he had taken any drugs or smoked any substances, Defendant stated that he had smoked some K-2 about an hour earlier. Officer Scales thus directed Defendant to exit his vehicle and checked for weapons on his person. In response to the officer's request for identification, Defendant stated that his driver's license had been suspended (which the officer confirmed). The officer then conducted field sobriety tests. On the basis of Defendant's performance on the tests, the officer arrested Defendant for DUI, among other offenses. After his arrest, Defendant was placed in the back of a police cruiser while Officer Scales and other USPP officers who had arrived at the scene searched Defendant's vehicle. The

officers ultimately discovered a green, leafy substance that they suspected to be synthetic marijuana. Officer Scales testified that, after the search of Defendant's vehicle, he showed Defendant what the officers had found and asked him whether he would consent to a blood draw. Officer Scales testified that he told Defendant that the USPP wanted to get a blood draw from him "if he didn't mind." According to the officer, Defendant agreed, and he was taken to a hospital for the blood draw. Officer Scales testified that at the hospital Defendant signed a form indicating his consent to a blood draw but that the signed form was no longer available. After Defendant's blood was drawn, he was transported to the police station for processing and his citations and then released.

Defendant maintains that the Court should suppress the evidence from Defendant's blood draw because his consent to the blood draw was involuntary. Defendant first contends that his consent was not voluntary because he was not given *Miranda* warnings after he consented following his arrest. However, "the fact that Defendant was not given his *Miranda* warnings does not mean that his consent was involuntary, or that the fruits of such a search should be suppressed." *United States v. Woodland*, 285 F. Supp. 3d 864, 874 (D. Md. 2018) (citing *United States v. Patane*, 542 U.S. 630, 634 (2004); *United States v. Nichols*, 438 F.3d 437, 442 (4th Cir. 2006)). "[A]s long as Defendant's statements of consent were voluntary, the fact that he was not given *Miranda* warnings will not preclude the admission of evidence obtained from such searches." *Id.* "The applicable test for evaluating the voluntariness of a statement or confession is whether, given the totality of the circumstances, the will of the speaker was 'overborne and his capacity for self-determination critically impaired.'" *Id.* at 875 (quoting *United States v. Gray*, 137 F.3d 765, 771 (4th Cir. 1998) (en banc)). "The Government bears the burden of

establishing, by a preponderance of the evidence, that it obtained valid consent to search." *United States v. Buckner*, 473 F.3d 551, 554 (4th Cir. 2007).

> In viewing the totality of the circumstances, it is appropriate to consider the characteristics of the accused (such as age, maturity, education, intelligence, and experience) as well as the conditions under which the consent to search was given (such as the officer's conduct; the number of officers present; and the duration, location, and time of the encounter).

*United States v. Lattimore*, 87 F.3d 647, 650 (4th Cir. 1996) (en banc). "Whether the accused knew that he possessed a right to refuse consent also is relevant in determining the voluntariness of consent, although the Government need not demonstrate that the defendant knew of his right to refuse consent to prove that the consent was voluntary." *Id.* "The voluntariness of consent to search is a factual question . . . ." *Id.*

Here, contrary to Defendant's argument, the Court finds that, under the totality of the circumstances, he consented voluntarily to a blood draw. Defendant was cooperative while interacting with Officer Scales, and he agreed to the officer's search for weapons on his person. Defendant's particular characteristics, such as his age and maturity, do not suggest that the officers' interactions with him were coercive. Moreover, although there were multiple officers at the scene, there is no evidence that the officers at any time were threatening or had their weapons drawn when Officer Scales asked whether Defendant would consent to a blood draw. Rather, Defendant indicated his consent after Officer Scales asked Defendant if he would not mind to a blood draw. *See United States v. Taylor*, Criminal No. WDQ-12-0570, 2013 WL 4461595, at *3 (D. Md. Aug. 16, 2013) ("This response was an affirmative indication of consent: i.e., that Taylor *did not mind* if a search was conducted."), *aff'd per curiam*, 601 F. App'x 212 (4th Cir. 2015). In fact, "[a] defendant need not give consent verbally for there to be valid consent. Where a suspect responds to law enforcement's requests to search his person or belongings with

3

an act that affirmatively facilitates the search, the suspect has validly consented to the search." *Woodland*, 285 F. Supp. 3d at 874 (citing *United States v. Gordon*, 173 F.3d 761, 766 (10th Cir. 1999); *United States v. Smith*, 30 F.3d 568 (4th Cir. 1994); *United States v. Wilson*, 895 F.2d 168 (4th Cir. 1990) (per curiam)).

Defendant contends that the Government did not meet its burden to show his voluntary consent because of its failure to provide written evidence of his consent. Providing a written consent form is not a necessary predicate to establish that a person voluntarily consented to a search, however. *United States v. Carrate*, 122 F.3d 666, 670 (8th Cir. 1997) (citing *Ohio v. Robinette*, 519 U.S. 33, 39-40, 117 S. Ct. 417, 421 (1996)); *see United States v. Price*, 558 F.3d 270, 279 (3d Cir. 2009); *Wilson v. City of Chanute*, 43 F. Supp. 2d 1202, 1210 (D. Kan. 1999) ("The Constitution does not require that officers procure written consent to search." (citing *United States v. Lewis*, 24 F.3d 79, 81 (10th Cir. 1994))).

Defendant further maintains that Officer Scales's failure to advise him of his right to refuse to submit to a blood test renders his consent to such a test involuntary. Indeed, effective June 8, 2018, 36 C.F.R. § 4.23(c) no longer prohibits refusal by a motor vehicle operator within a park area to submit to a blood test. 36 C.F.R. § 4.23(c)(1)-(2); *see Birchfield v. North Dakota*, 136 S. Ct. 2160, 2186 (2016) (motorists may not be criminally punished for refusing to submit to blood test on the basis of implied consent). As noted previously, however, "the Government need not demonstrate that the defendant knew of his right to refuse consent to prove that the consent was voluntary." *Lattimore*, 87 F.3d at 650. And, although he asserts that Officer Scales failed to advise him accurately of the ramifications of the implied-consent laws, Defendant points to no binding authority suggesting that law enforcement's failure to advise him of any negative consequences of refusing to consent to a blood draw renders his consent involuntary. In

4

fact, in light of *Birchfield*, the implied-consent provision and associated administrative penalty of 18 U.S.C. § 3118 appear to apply no longer to blood tests.[1] Thus, absent any negative legal consequences from refusing to consent to a blood draw, Defendant's contention that his consent to a blood draw was involuntary because Office Scales failed to advise him of any consequences from refusing to consent is unavailing.

---

[1] Title 18 U.S.C. § 3118 provides:

> **(a) Consent.**--Whoever operates a motor vehicle in the special maritime and territorial jurisdiction of the United States consents thereby to a chemical test or tests of such person's blood, breath, or urine, if arrested for any offense arising from such person's driving while under the influence of a drug or alcohol in such jurisdiction. The test or tests shall be administered upon the request of a police officer having reasonable grounds to believe the person arrested to have been driving a motor vehicle upon the special maritime and territorial jurisdiction of the United States while under the influence of drugs or alcohol in violation of the laws of a State, territory, possession, or district.
>
> **(b) Effect of Refusal.**--Whoever, having consented to a test or tests by reason of subsection (a), refuses to submit to such a test or tests, after having first been advised of the consequences of such a refusal, shall be denied the privilege of operating a motor vehicle upon the special maritime and territorial jurisdiction of the United States during the period of a year commencing on the date of arrest upon which such test or tests was refused, and such refusal may be admitted into evidence in any case arising from such person's driving while under the influence of a drug or alcohol in such jurisdiction. Any person who operates a motor vehicle in the special maritime and territorial jurisdiction of the United States after having been denied such privilege under this subsection shall be treated for the purposes of any civil or criminal proceedings arising out of such operation as operating such vehicle without a license to do so.

Because refusing to submit to a blood test is no longer a criminal offense under 36 C.F.R. § 4.23(c), such refusal apparently does not trigger the one-year driving suspension under § 3118(b).

For these reasons, the Court finds that, even in the absence of evidence of Defendant's written consent, the Government has established, by a preponderance of the evidence, that Defendant freely gave his consent to a blood draw, as his will was not overborne and his capacity for self-determination was not critically impaired. Defendant's motion to suppress the evidence from his blood draw thus is **DENIED**.

Date: December 12, 2019                                         /s/
                                                    Thomas M. DiGirolamo
                                                    United States Magistrate Judge